# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **MCARTHUR PEAKE,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )    **JURY TRIAL DEMANDED** |
| | ) |
| **SERGEANT TIMOTHY DEWAYNE** | ) |
| **ROBINSON,** | ) |
| | ) |
|    **Defendant.** | ) |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** the Plaintiff, McArthur Peake, by and through the undersigned counsel of record, and alleges the following:

## PRELIMINARY STATEMENT

Plaintiff, McArthur Peake, is currently in the custody of the Alabama Department of Corrections ("ADOC"), being housed at St. Clair Correctional Facility. This action seeks redress for the violation of Mr. Peake's constitutional right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution.

## PARTIES

1. **Plaintiff McArthur Peake** ("Plaintiff" or "Mr. Peake") is a citizen of the United States, a citizen of the State of Alabama, and is over nineteen (19) years of age.

1

At all times relevant to this action, Plaintiff was in the custody of the ADOC, being housed at St. Clair Correctional Facility in Springville, Alabama.

2. **Defendant Sergeant Timothy Dewayne Robinson** ("Defendant" or "Mr. Robinson") is a citizen of the United States, a citizen of the state of Alabama, and is over nineteen (19) years of age. At all times relevant to this action, Defendant was employed as a Sergeant at St. Clair Correctional Facility.

## STATEMENT OF JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1343 (a)(4), and 42 U.S.C. § 1988(a), as this action seeks redress for a violation of Plaintiff's Eighth Amendment rights under the United States Constitution, pursuant to 42 U.S.C. § 1983.

4. This Court has supplemental jurisdiction for Plaintiff's state law claims under 28 U.S.C. § 1367(a), as they arise from the same case or controversy and are so related to Plaintiff's 42 U.S.C. § 1983 claims.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to the Plaintiff's claims occurred in this Court's judicial district.

## FACTUAL ALLEGATIONS

I.   **Plaintiff and Defendant's Relationship**

6. Defendant Robinson was a Sergeant at St. Clair Correctional Facility in 2021. As Correctional Sergeant, Defendant Robinson was responsible for leading a unit of correctional officers in the security coverage of his assigned area.

7. Defendant Robinson was well-know throughout St. Clair as a member of the Crip Gang. Defendant Robinson even had a Crip gang-related tattoo branded on his arm.

8. At some point in 2021, Defendant Robinson and Mr. Peake began a relationship in which Defendant Robinson would bring contraband into the facility in exchange for money.

9. On several different occasions, Defendant Robinson brought contraband such as outside food and alcohol to Mr. Peake in exchange for money.

10. At some point during the approximately six-month relationship, Defendant Robinson fell into debt with Mr. Peake. Defendant Robinson owed Mr. Peake hundreds of dollars.

## II. The "M" Dorm Incident

11. After falling into debt with Mr. Peake, Defendant Robinson hired known Crip Gang members to intimidate Mr. Peake.

12. On or about August 19, 2021, Crip Gang members entered Mr. Peake's dorm and demanded that Mr. Peake not bother Mr. Robinson about the money he owed him.

13. There were no correctional officers present in the "cube" at the time.

14. The inmates and Mr. Peake discussed matters in the back of the day space at St. Clair. This area was notoriously known as an area that was out of camera view.

15. The conversation escalated between Mr. Peake and the inmates.

16. Officers, including Defendant Robinson, eventually responded to the altercation between the inmates.

17. Defendant Robinson took at least one of the Crip Gang member inmates to the back of the day space out of camera view.

18. Defendant Robinson then approached Mr. Peake and told him to pack his things because he was being moved to "N" Dorm.

### III. The "N" Dorm Incident

19. During the early morning hours of August 20, 2021, Defendant Robinson and four other officers escorted Mr. Peake to "N" Dorm.

20. At or around the same time that Mr. Peake was gathering his belongings, other inmates, who were known Crips, were allowed to leave their cells. These inmates roamed freely in or near "N" Dorm at the time of Mr. Peake's transport.

21. Minutes later, Mr. Peake was in front of his new cell assignment in "N" Dorm moving his belongings from the cart into the cell.

22. Upon returning to the cart to retrieve more of his belongings, Mr. Peake felt a sharp object stabbing him multiple times.

23. Mr. Peake turned around and saw Michael James ("Mr. James"), who was an inmate in the Crip Gang, holding a knife or knife-like object.

24. Officers sprayed a chemical irritant to gain control over the situation, which caused the floor to be slippery. Individuals, including Mr. Peake, fell to the floor.

25. Defendant Robinson picked up the knife Mr. James used to stab Mr. Peake and either concealed or destroyed it.

26. Defendant Robinson falsely reported in his ADOC Incident Report that no weapon was recovered at the scene.

27. Defendant Robinson also falsely reported that Mr. Peake had a weapon at the scene. However, no weapon was recovered in a subsequent search of Mr. Peake's cell.

28. During the entire incident, Mr. Peake was unarmed, as confirmed by video footage and a subsequent search of Mr. Peake's cell.

### IV. Plaintiff's Subsequent Stab Wounds

29. After being stabbed, Mr. Peake sought treatment at St. Clair's infirmary. The initial health review indicated that Mr. Peake exhibited signs of trauma.

30. Mr. Peake's medical chart marked the following wounds from the attack: 1) a 0.7 cm laceration on his upper right shoulder near his neck, 2) a 9.5 cm scratch near the same area, and 3) a 0.4 cm cut on his upper right shoulder near his neck.

31. Medical staff indicated that Mr. Peake "was assaulted with an ice pick at the left upper chest and left trapezius near [the] deltoid area."

32. A procedure was performed where three nylon sutures were used to close the wounds.

33. Following the attack, Mr. Peake was assigned to the Restrictive Housing Unit ("RHU"). He indicated on the form that he had been recently harmed or assaulted and that someone had recently threatened or tried to harm him.

34. Around June of 2022, Mr. Peake complained of lower back pain to the infirmary. He stated, "I have low back pain since being stabbed in August last year."

35. Mr. Peake maintained that a lower back puncture wound went undocumented because it was not bleeding as the others were immediately after the stabbing. Mr. Peake discovered the puncture wound after discovering a scab over the wound days after the incident.

### V.  Defendant Robinson's Criminal Charges

36. After the incident, ADOC's Intelligence and Investigations Division ("I&I") discovered that Defendant Robinson was/is a member of the Crip gang.

37. Upon information and belief, audio and video evidence revealed that Defendant Robinson hired and directed inmates to stab Mr. Peake by killing him. Such evidence also revealed that Defendant Robinson knowingly and purposefully discarded the knife used to stab Mr. Peake.

38. Subsequently, Defendant Robinson was indicted in the Circuit Court of St. Clair County, Alabama for hindering prosecution, obstructing governmental operations, and tampering with physical evidence.[1]

39. As alleged in Count I of the Indictment, Defendant Robinson "rendered criminal assistance to. . .Michael James, by concealment or destruction of physical evidence, said evidence being a knife or knife-like object, in violation of Section 13A-10-43 of the Alabama Criminal Code."[2]

40. As alleged in Count II of the Indictment, Defendant Robinson "knowingly ma[de] a false statement or report that "no weapon was recovered" on an Alabama Department of Corrections Incident Report, in violation of Section 13A-10-2 of the Code of Alabama."

41. As Alleged in Count III of the Indictment, Defendant Robinson "knowingly collected and concealed a knife or knife-like object, in violation of 13A-10-129 of the Code of Alabama."

42. On April 30, 2023, Defendant Robinson pleaded guilty to hindering prosecution in the second degree, obstructing government operations, and tampering with physical evidence.

---

[1] *See generally* Exhibit A. (Indictment for case number 59-CC-2022-000074).
[2] Mr. James was Indicted for attempted murder in stabbing Mr. Peake.

# CAUSES OF ACTIONS

# FEDERAL CLAIMS

## COUNT I: VIOLATION OF 42 U.S.C. § 1983
## STATE-CREATED DANGER

43. Plaintiff adopts and re-alleges paragraphs 1-3 and 5-42 of this Complaint as if fully set forth herein.

44. Pursuant to the Eighth Amendment of the United States Constitution, an incarcerated plaintiff is entitled to be free from known and unreasonable risks of serious harm while in the custody of the State. This includes any risks from a state-created danger.[3]

45. As an inmate in custody of the State of Alabama, Plaintiff's ability to care for himself and ensure his safety and well-being were limited.

46. On or around August 19, 2021, Defendant Robinson used his position as a Sergeant at the ADOC to hire Crip Gang members to stab and kill Plaintiff.

47. Defendant Robinson knew or should have known that creating and promoting such a dangerous environment created a substantial risk of serious harm to Plaintiff's safety and well-being.

---

[3] *See Mitchell v. Duval County Sch. Bd.*, 107 F.3d 837, 839 (11th Cir. 1997) ("The environment created by the state actors must be dangerous; they must know that it is dangerous; and to be liable, *they must have used their authority to create an opportunity that would not have otherwise existed for the third party's crime to occur.*")

48. In violation of Plaintiff's Eighth Amendment rights, Defendant Robinson consciously disregarded such risk when he transported Plaintiff from "M" Dorm to "N" Dorm and allowed the Crip gang members in the dorm during the transport.

49. Defendant Robinson further disregarded such risk by allowing Mr. James to stab Plaintiff multiple times with a knife or knife-like object within minutes of transporting Plaintiff, concealing or destroying the knife used to stab Plaintiff, and falsifying the ADOC Incident Report regarding the incident.

50. Defendant Robinson's violations of Plaintiff's Constitutional rights explained in this Count were taken with deliberate indifference, malice, willfulness, and reckless indifference to Plaintiff's safety and well-being.

51. Defendant Robinson's actions directly and proximately subjected Plaintiff to an unreasonable risk of serious harm, including multiple stab wounds to his person.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983
## DELIBERATE INDIFFERENCE

52. Plaintiff adopts and re-alleges paragraphs 1-3, 5, and 11-42 of this Complaint as if fully set forth herein.

53. Pursuant to the Eighth Amendment of the United States Constitution, an incarcerated plaintiff is entitled to be free from unreasonable risks of serious harm in which prison officials are aware.[4]

54. On or around August 19, 2021, Defendant Robinson subjectively knew that Plaintiff and Crip Gang members had a disagreement regarding money Defendant Robinson owed Plaintiff. Defendant Robinson subjectively knew or should have known that Plaintiff was at risk of serious harm after the disagreement.

55. Defendant Robinson disregarded the risk of serious harm when he hired Crip Gang members to stab and kill Plaintiff.

56. On August 20, 2021, Defendant Robinson facilitated Plaintiff's transport to "N" Dorm and allowed those known Crip Gang members in the same dorm during the transport.

57. Within minutes of Plaintiff's transport to "N" Dorm, Mr. James, a known Crip, stabbed Plaintiff multiple times with a knife or knife-like object.

58. Defendant's deliberate indifference was further evidenced by Defendant knowingly concealing and/or destroying the knife or knife-like object used to stab

---

[4] Deliberate indifference requires a government official have 1) subjective knowledge of a serious risk of harm, 2) a disregard for that risk, 3) by conduct that is more than mere negligence. *See Powell v. Sheriff*, 511 Fed. Appx. 957, 961 (11th Cir. 2013).

Plaintiff and falsifying the ADOC Incident Report, stating "no weapon was recovered" at the scene of the stabbing.

59. Defendant Robinson's violations of Plaintiff's Constitutional rights explained in this Count were taken with deliberate indifference, malice, willfulness, and reckless indifference to Plaintiff's safety and well-being.

60. Such deliberate indifference, malice, willfulness, and reckless indifference caused Plaintiff's injuries, including multiple stab wounds to his person.

### COUNT III: VIOLATION OF 42 U.S.C. § 1983
### FAILURE TO PROTECT

61. Plaintiff adopts and re-alleges paragraphs 1-3, 5-6, and 11-35 of this Complaint as if fully set forth herein.

62. The Eighth Amendment of the United States Constitution requires a prison official to take reasonable measures to guarantee an inmate's safety.[5]

63. On August 20, 2021, Defendant Robinson failed to perform his job responsibilities in ensuring security coverage in his assigned area. In doing so, Defendant Robinson failed to protect Plaintiff.

---

[5] A plaintiff can succeed on a failure to protect claim if he shows the following: 1) that he was incarcerated under conditions that posed a substantial risk of serious harm, 2) that the prison officially had a sufficiently culpable state of mind that amounted to deliberate indifference, and 3) causation. *See Cox v. Nobles*, 15 F.4th 1350, 1357-58 (11th Cir. 2021).

64. After having a disagreement with Crip gang members regarding Plaintiff and Defendant Robinson's relationship, Defendant Robinson transported Plaintiff from "M" Dorm to "N" Dorm.

65. During that time, Crip members, who were hired by Defendant Robinson to stab and kill Plaintiff, were allowed to freely roam the same dorm.

66. Within minutes of being transported to "N" Dorm, Mr. James stabbed Plaintiff multiple times with a knife or knife-like object.

67. Defendant Robinson subjectively knew or should have known that employing known Crip members to stab and kill Plaintiff subjected Plaintiff to a substantial risk of serious harm.

68. Defendant Robinson subjectively knew or should have known that transporting Plaintiff to "N" Dorm, while allowing Crip Gang members hired to kill him freely move around the same dorm, subjected Plaintiff to a risk of serious harm, including death.

69. Defendant Robinson objectively disregarded such risk by transporting Plaintiff to "N" Dorm and simultaneously allowing Crips to move freely in the same dorm. Such disregard directly and proximately caused Plaintiff to be stabbed multiple times within minutes of being transported.

70. Defendant Robinson's violations of Plaintiff's Constitutional rights explained in this Count were taken with deliberate indifference, malice, willfulness, and reckless indifference to Plaintiff's safety and well-being.

### COUNT IV: VIOLATION OF 42 U.S.C. § 1983
### CIVIL CONSPIRACY

71. Plaintiff adopts and re-alleges paragraphs 1-3, 5-6, and 10-42 of this Complaint as if fully set forth herein.

72. As described more fully above, Defendant conspired with other known Crip Gang members to stab and kill Plaintiff.

73. Defendant Robinson, in conjunction with other Crip Gang members, reached an agreement to deprive Plaintiff of his right to be free from unreasonable harm.

74. In furtherance of this conspiracy, Defendant Robinson transported Plaintiff to "N" Dorm and allowed Crips in the same dorm to stab and kill Plaintiff.

75. In furtherance of this conspiracy, as alleged in the Indictment, Defendant Robinson knowingly concealed and/or destroyed the knife or knife-like object Mr. James used to stab Plaintiff and knowingly and intentionally falsified the ADOC Incident Report, stating that "no weapon was recovered" after the stabbing.

76. As a direct and proximate result of Defendant Robinson's agreement with the Crip Gang members, Plaintiff's constitutional rights were violated, and he suffered multiple stab wounds to his person.

## STATE CLAIMS

### COUNT V: WANTONNESS

77. Plaintiff adopts and re-alleges paragraphs 1-6 and 10-35 of this Complaint as if fully set forth herein.

78. On or about August 20, 2021, Defendant Robinson, a Sergeant with the ADOC, unlawfully and recklessly hired known Crip gang members to stab and kill Plaintiff.

79. Defendant Robinson, with reckless indifference to Plaintiff's safety and well-being, then intentionally transported Plaintiff between dorms and allowed Crip Gang members to stab him during such transport.

80. Defendant knew or should have known that such actions would likely result in serious harm and even death to Plaintiff.

81. Defendant's reckless disregard proximately caused Plaintiff's injuries, including multiple stab wounds to his person.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the entry of judgment against Defendant(s) pursuant to an order awarding:

    a.    Compensatory damages in an amount to be determined for emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages in an amount to be determined by a jury;

    b.    Nominal damages in an amount to be determined by a jury;

    c.    Punitive damages in an amount to be determined by a jury;

    d.    Reasonable attorney's fees and costs; and

    e.    All other and further monetary and equitable relief as this Honorable court deems just and proper.

## JURY DEMAND

82. Plaintiff respectfully requests a trial by jury.

Respectfully submitted this 11th day of August, 2023.

*/s/ Leroy Maxwell, Jr.*
Leroy Maxwell, Jr.

*/s/ Kristen Gochett*
Kristen Gochett

*Attorneys for Plaintiff*

**Maxwell & Tillman**
2326 2nd Avenue North
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
maxwell@mxlawfirm.com
kgochett@mxlawfirm.com

**SERVE DEFENDANT(S) VIA CERTIFIED MAIL:**

**Sergeant Timothy Dewayne Robinson**
1404 Virgina Avenue
Fultondale, AL 35068

*/s/ Leroy Maxwell, Jr.*
OF COUNSEL